**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

      Plaintiff,

  v.

**DERRICK LAMAR DAVIS, JR.,**

      Defendant.

Case No. 2:22-cr-195
**JUDGE EDMUND A. SARGUS, JR.**

**OPINION AND ORDER**

Defendant Derrick Lamar Davis, Jr. is charged in a single-count indictment with Felon in Possession of a Firearm. (ECF No. 1.) Mr. Davis moves to suppress all evidence obtained from the warrantless traffic stop and warrantless search of Mr. Davis and the motor vehicle in which he was a passenger, as well as his subsequent interrogation. (ECF No. 23.) The Government opposes Mr. Davis's motion. (ECF No. 24.) On February 10, 2023, the Court held a suppression hearing. (*See* ECF No.28.) The Court heard testimony from Columbus Division of Police ("CPD") patrol officer Christopher Davis ("Officer Davis") and ATF (Alcohol, Tobacco, Firearms, and Explosives) Task Force Detective Emanuel Woods. The parties also presented several video exhibits, including video from the dashboard camera of Officers Davis and Endsley's police cruiser and video from Officer Davis's body worn camera. Mr. Davis also presented the Court with the Use of Force Report arising from his arrest. During the hearing, the Court accepted the parties' exhibits into evidence. The motion is now ripe for review. For the following reasons, Mr. Davis's motion is **DENIED**.

1

I.  BACKGROUND

On October 11, 2022, a federal grandy jury returned an Indictment charging Mr. Davis with one count of Felon in Possession of a Firearm. (ECF No. 1.) The Indictment indicated that Mr. Davis, a convicted felon, possessed two firearms, both of which CPD discovered during a traffic stop and subsequent search of the vehicle in which he was a passenger.

Testimony during the suppression hearing established that on January 11, 2022, CPD patrol officers Christopher Davis and Austin Endsley were driving northbound on Kelton Avenue in marked cruiser number 111 when they noticed a black Dodge Dart approaching the intersection of Kelton Avenue and Livingston Avenue. The Dodge Dart turned right on a red light onto Livingston Avenue, but in doing so, Officer Davis testified that he observed the vehicle commit multiple traffic violations: (1) the vehicle failed to come to a complete stop at the stop bar, which immediately preceded the pedestrian cross walk, before turning right; (2) the driver did not activate the vehicle's turn signal at least 100 feet before turning; (3) when turning, the vehicle straddled both lanes; and (4) several children in the backseat appeared to be unrestrained. In addition to Officer Davis's testimony, the parties' presented video from the police cruiser's dashboard camera, which showed the black Dodge Dart failing to stop at the stop bar before turning onto Livingston. (Def. Ex. 7A, 00:00:36-00:00:40.) The video did not, however, clearly capture the other violations to which Officer Davis testified.

Officers Davis and Endsley then followed the Dodge Dart. While following the Dodge Dart, Officer Endsley ran the vehicle's license plate through LEADS (the Law Enforcement Automated Data System), which returned several hits for possible violations. (Def. Ex. 22A, 00:01:32-00:01:44.) Officer Davis testified that he only heard the audible alerts from the LEADS results—that is, he did not know the basis for the alerts, but he understood them to indicate that

the registered vehicle owner may have a felony warrant or an expired license or that the vehicle's registration was expired.

Soon after turning right onto Livingston Avenue, while being followed by Officer Davis and Officer Endsley, the Dodge Dart made another right turn onto Lilley Avenue. (Def. Ex. 7A, 00:00:50-00:00:56.) The vehicle then parked on the street. (*Id.* at 00:00:59-00:01:03.) Officers Davis and Endsley followed suit, parking the cruiser behind the Dodge Dart. While parking the police cruiser, Officer Davis activated the cruiser's emergency lights and siren. (*Id.* at 00:01:00-00:01:02.) As shown in the dashboard camera's video, after the initiation of the lights and siren, the front passenger door of the Dodge Dart opened, and the passenger exited the vehicle. (*Id.* at 00:01-00:01:07.) This was Mr. Davis.

Officers Davis and Endsley then exited the cruiser. (*Id.* at 00:01:04-00:01:11.) Officer Endsley instructed Mr. Davis to return to the vehicle; he complied. (*Id.* at 00:01:05-00:01:12.) Meanwhile, Officer Davis approached the driver and explained to the driver that they stopped her because she failed to (1) stop before the crosswalk when turning on red and (2) stay in her lane when turning. (Def. Ex. 22A, 00:03:00-00:03:10.)

While Officer Davis spoke with the driver, Officer Endsley spoke with Mr. Davis. Officer Davis testified that, during Officer Endsley's conversation with Mr. Davis, Officer Endsley detected a strong odor of marijuana coming from the vehicle. (*See also* Def. Ex. 3 at 1.) Mr. Davis admitted to having marijuana on his person. (Def. Ex. 13 at 2.) Officer Endsley then asked Mr. Davis to exit the vehicle and performed a pat down. (Def. Ex. 7A, 00:02:15-00:03:00.) During the pat down, and with the front passenger door open, Officer Endsley noticed a handgun sticking out from under the front passenger seat. (Def. Ex. 22A, 00:03:58-00:04:00.) Officer Endsley quickly informed Officer Davis of the gun's presence. (*Id.*) Moments later, Mr. Davis pulled away from

Officer Endsley and fled on foot. (*Id.* at 00:04:00-00:04:47.) Officer Endsley attempted to tase Mr. Davis but was unsuccessful. (Def. Ex. 13 at 3.) Both officers pursued Mr. Davis and apprehended him a few blocks away. (Def. Ex. 22A, 00:04:47-00:05:22.)

Officer Endsley then returned to the vehicle, where CPD recovered two loaded handguns. After his arrest and receiving *Miranda* warnings, Mr. Davis made various statements.

## II. LAW & ANALYSIS

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Evidence "seized in searches and seizures that are deemed unreasonable" and evidence "acquired as a result of an unlawful search" are inadmissible pursuant to the exclusionary rule. *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995).

Under Federal Rule of Criminal Procedure 12(b)(3)(C), a defendant may file a pretrial motion asserting a Fourth Amendment violation and seeking suppression of unlawfully seized evidence. *See* Fed. R. Crim. P. 12(b)(3)(C). The defendant carries the burden to show "a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)). The Government's burden, on the other hand, is to prove that a warrantless search was not unconstitutional. *U.S. v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002).

Here, Mr. Davis asserts that the Government has failed to carry its burden. According to Mr. Davis, Officers Davis and Endsley lacked probable cause when they initiated the traffic stop

4

and when they ordered Mr. Davis to return to the vehicle. Therefore, according to Mr. Davis, the Court must suppress all evidence obtained because of the warrantless search and seizures by CPD, including Mr. Davis's subsequent statements. (ECF No. 23 at 4.) Thus, this case asks two questions: Did Officers Davis and Endsley violate the Fourth Amendment when they stopped the vehicle in which Mr. Davis was a passenger, and (2) did Officer Endsley violate the Fourth Amendment when he ordered Mr. Davis to return to the vehicle. The answer to both inquires is "no." Officer Davis observed the driver of the Dodge Dart commit multiple traffic infractions before initiating the traffic stop, thus establishing probable cause for the stop. And where there is probable cause for the traffic stop, the Fourth Amendment allows officers to order passengers to remain in the stopped vehicle. Accordingly, because the traffic stop and Mr. Davis's detention did not offend the Fourth Amendment, the Court will not suppress the evidence seized and the incriminating statements made by Mr. Davis.

### A. The Traffic Stop Was Constitutionally Valid

"Stopping and detaining a motorist constitutes a seizure within the meaning of the Fourth Amendment . . . ." *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (internal quotation marks omitted). An officer may stop and detain a motorist if the officer has probable cause to believe that the driver has committed a traffic violation. *Id.* The Sixth Circuit has defined "probable cause" as "reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). When a traffic stop is supported by probable cause, the officer's "actual motivations" are irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (1996). To determine if an officer possessed probable cause that a motorist committed a traffic violation, the court must determine that the officer knew or reasonably believed that the motorist did something representing a violation of the law. *U.S. v. Hughes*, 606

F.3d 311, 316 (6th Cir. 2010). This inquiry is based on the totality of the circumstances. *U.S. v. Barrett*, 890 F.2d 855, 862 (6th Cir. 1989).

At the suppression hearing, Officer Davis testified that, prior to initiating the stop, he witnessed the driver of the Dodge Dart commit multiple traffic violations: (1) the driver failed to come to a complete stop at the stop bar at a red traffic light; (2) she failed to activate the vehicle's turn signal at least 100 feet before turning right onto Livingston Avenue; (3) when turning onto Livingston Avenue, the vehicle straddled both eastbound lanes; and (4) several children in the backseat did not appear to be secure in the vehicle. Officer Davis also informed the driver that he pulled her over for failing to stop at the stop bar and for failing to stay in her lane when turning. (Def. Ex. 22A, 00:03:00-00:03:10.)

Each basis to which Officer Davis testified provides him with probable cause to initiate a traffic stop. Beginning with the driver's failure to stop at the stop bar, pursuant to Ohio Rev. Code § 4511.13, "[v]ehicular traffic . . . facing a steady circular red signal indication, unless entering the intersection to make another movement permitted by another signal indication, shall stop at a clearly marked stop line . . . ." A violation of Ohio Rev. Code § 4511.13 constitutes a traffic violation. *United States v. Watson*, No. 1:21-cr-110, 2022 U.S. Dist. LEXIS 223039, at *9 (S.D. Ohio Dec. 9, 2022). The driver's failure to use her turn signal at least 100 feet before making a right turn is also a traffic violation. *See* Ohio Rev. Code § 4511.39; *United States v. Delano*, 543 F. Supp. 2d 791 (N.D. Ohio 2008). So, too, is the driver's continuous lanes violation. *See* Ohio Rev. Code § 4511.33; *United States v. Tragash*, 691 F. Supp. 1066, 1071 (S.D. Ohio 1988). And children under 15 years of age must be restrained in a child restraint seat. *See* Ohio Rev. Code § 4511.81; *United States v. Abrams*, 494 F. Supp. 2d 657, 660 n.4 (S.D. Ohio 2005). Thus, because

Officer Davis witnessed firsthand the driver commit these traffic violations, he possessed "reasonable ground for belief" that the driver committed a traffic violation. *Blair*, 524 F.3d at 748.

Defendant argues that the police cruiser's dashcam video demonstrates that none of these violations occurred. As an initial matter, the Court finds the dashcam video inconclusive regarding the turn signal, continuous lanes, and unrestrained-children violations. The dashcam video does, however, clearly show the driver fail to stop at the stop bar before turning onto Livingston Avenue. (Def. Ex. 7A, 00:00:36-00:00:40.) This footage corroborates Officer Davis's testimony that the driver crossed the stop bar in violation of Ohio Rev. Code § 4511.13. Moreover, Officer Davis informed the driver that she failed to stop at the stop bar within about a minute of conducting the stop. (*Id.* at 00:01:56-00:03:00.) Thus, the evidence before the Court establishes that Officer Davis "reasonably believed" that the driver of the Dodge Dart had failed to stop at the stop bar in violation of Ohio Rev. Code § 4511.13. *See Hughes*, 606 F.3d at 316. Therefore, Officer Davis had probable cause to make a stop for a traffic violation.

The remaining traffic violations further confirm that Officer Davis had probable cause to stop the Dodge Dart. Although the dashboard camera did not capture the other violations, Officer Davis's credible testimony establishes that he "reasonably believed" the driver had committed them. *See id.* Officer Davis testified that he observed the driver straddled multiple lanes when turning onto Livingston Avenue, thus violating R.C. § 4511.33. He also informed the driver of this infraction when he stopped her. (Def. Ex. 22A, 00:03:00-00:03:10.) The Court therefore finds that Officer Davis had probable cause to stop the driver for the continuous lanes violation. *See Watson*, 2022 U.S. Dist. LEXIS 223039, at *9–10 (finding officer had probable cause for stop based on officer's testimony and explanation given to driver as basis for the stop).

The Court also credits Officer Davis's testimony that the driver failed to use her turn signal at least 100 feet before making the turn onto Livingston Avenue. This, too, is sufficient to find that Officer Davis possessed probable cause to stop the driver pursuant to R.C. § 4511.39. *See United States v. Pedicini*, 804 F. App'x 351, 353-54 (6th Cir. 2020) (officer's testimony, despite minor inconsistencies, was sufficient to show probable cause for a traffic stop).

Finally, the Court accepts Officer Davis's uncontroverted testimony that he observed unrestrained children in the moving vehicle, violating R.C. § 4511.81, which in turn provides another basis to lawfully stop the driver. *See Abrams*, 494 F. Supp. 2d at 660 n.4 (citing R.C. § 4511.81 and noting it would be "fruitless" to challenge officer's stop of the vehicle in question based on the officer's testimony that he observed two children "bouncing around the back seat without being so restrained").

In sum, Officer Davis had probable cause to believe the driver had committed four traffic violations: (1) failure to stop at the stop bar, (2) a continuous lanes violation, (3) failure to signal a turn, and (4) failure to secure children in a child restraint system. Because Officer Davis had probable cause to initiate the traffic stop, the traffic stop was constitutionally valid at its outset. *See Winters*, 782 F.3d at 296 ("It is well-established that where an 'officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment.'") (quoting *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996)).

**B. Officer Endsley Lawfully Ordered Mr. Davis to Remain in the Vehicle During the Traffic Stop**

Mr. Davis argues that he was unlawfully seized when Officer Endsley ordered him to remain in the vehicle during the traffic stop. Mr. Davis asserts that, because he was in the process of exiting the vehicle prior to the initiation of the stop, he was not already seized, and therefore

8

Officer Endsley needed probable cause to order him back into the vehicle, which Officer Endsley did not have. (Mot. to Suppress at 5–6, ECF No. 23.) The Court disagrees.

Once the officers observed the driver commit a traffic violation, such as her failure to stop at the stop bar at the red light, they possessed all the suspicion necessary to briefly detain the vehicle *and Mr. Davis*. *See Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (holding police may "detain an automobile and its occupants pending inquiry into a vehicular violation" without "addition[al] cause to believe any occupant . . . is involved in criminal activity"). During this inquiry into the traffic violation, given the "weighty interest in officer safety," an officer does not violate the Fourth Amendment by ordering the passenger to either exit or remain in the vehicle. *See Md. v. Wilson*, 519 U.S. 408, 414–415 (1997) ("an officer making a traffic stop may order passengers to get out of the car pending completion of the stop"); *United States v. Prigmore*, 15 F.4th 768, 778 (6th Cir. 2021) ("Ordering [the passenger] to stay in the vehicle likewise allowed [the officer] to remain in 'command of the situation,' . . . and an officer asking a passenger to remain *inside* the vehicle invades his personal liberty no more than ordering him *out* of the car[.]") (internal citations omitted); *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) ("[T]he Fourth Amendment permits officers to conduct an otherwise-legitimate stop on their own terms— whether by keeping the driver (and occupants) in the car or by asking them to exit the car, depending on what they perceive as safer.") (internal citations omitted).

Here, Officer Endsley did not violate the Fourth Amendment when he ordered Mr. Davis to remain in the vehicle after initiating the traffic stop. As an initial matter, the Court finds that the traffic stop began when the officers pulled up behind the Dodge Dart and activated the police cruiser's audible siren and emergency lights. *See Johnson*, 555 U.S. at 333 ("A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation."). This signals "to

9

a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will." *Id.* Although Mr. Davis contends that he was ordered back to the vehicle "prior to the initiation of the traffic stop," (Mot. to Suppress at 5, ECF No. 23), the video evidence demonstrates that he did not begin exiting the vehicle until *after* Officer Davis hit the siren and lights. (Def. Ex. 7A 00:01:00-00:01:02). Thus, as an occupant of the stopped vehicle, Officers Davis and Endsley could lawfully detain him while they investigated the driver's traffic violations without having additional cause to believe that Mr. Davis was involved in unlawful activity. *See Johnson*, 555 U.S. at 327.

And when Mr. Davis exited the vehicle, the Constitution permitted Officer Endsley to order Mr. Davis to return. *See Prigmore*, 15 F.4th at 778. Undergirding this directive was the officers' concern for their safety. As Officer Davis testified, the emergence of Mr. Davis from the vehicle was a "red flag," suggesting that Mr. Davis was a "flight or fight" risk. Thus, the order to return to the vehicle not only allowed the officers to "remain in command of the situation," but it was also consistent with the Fourth Amendment. *See Prigmore*, 15 F.4th at 778.

**C. The Government Lawfully Obtained the Relevant Evidence and Statements After the Traffic Stop**

Mr. Davis's argument on this issue rests on the "fruit of the poisonous tree" doctrine. (Mot. to Suppress at 7, ECF No. 23 (citing *United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963))).) This doctrine "bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010) (quoting *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008)). Specifically, Mr. Davis argues that the Court should "suppress the evidence (two firearms) seized and incriminating statements made by Mr. Davis"

because "the traffic stop and detention of Mr. Davis . . . lacked probable cause." (Mot. to Suppress at 7, ECF No. 23.) The Court disagrees.

"[A] seizure that is lawful at its inception," such as the traffic stop here, "can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* The police can, however, extend the stop if something happens "*during the stop* to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020) (quoting *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012)). In determining whether an officer has reasonable, articulable suspicion of criminal activity, courts assess "the totality of the circumstances presented to the officer." *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012). "This is an objective standard premised on 'specific facts' that 'would lead a reasonable officer to suspect illicit activity.'" *Winters*, 782 F.3d at 298 (quoting *United States v. Johnson*, 482 Fed. Appx. 137, 143 (6th Cir. 2012)).

Officer Endsley had such suspicion. Officer Davis testified that during Officer Endsley's conversation with Mr. Davis, which took place contemporaneously with Officer Davis's investigation into the traffic violations with the driver, Officer Endsley detected a strong odor of marijuana emanating from the vehicle, and Mr. Davis admitted to having marijuana on his person, prompting Officer Endsley to conduct a pat down. During the pat down, with the passenger door ajar, Officer Endsley noticed a handgun lying under the passenger seat. Shortly after Officer Endsley alerted Officer Davis to the presence of the handgun, Mr. Davis attempted to flee the scene. The Court finds these uncontroverted facts, which all occurred before Officer Davis had

11

finished issuing the traffic citations to the driver, provided Officer Endsley with reasonable, articulable suspicion "that criminal activity [was] afoot." *See Lott*, 954 F.3d at 923.

The subsequent search and seizure of the vehicle did not violate the Fourth Amendment. Two exceptions to the warrant requirement are applicable here: the plain-view doctrine and the automobile exception. Mr. Davis does not challenge the applicability of either doctrine. Under the plain-view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) (quoting *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007)). Given the Court's prior discussion, this doctrine authorized CPD to seize the handgun that was sticking out from under the vehicle's passenger seat. *See United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008) (upholding seizure of a handgun from a vehicle under the plain-view doctrine when an officer standing outside the car could see the butt of the gun under the passenger seat).

As for the automobile exception, this exception "allows a warrantless search of an automobile if officers have probable cause to believe the vehicle contains evidence of a crime." *Galaviz*, 645 F.3d at 357. If justified under the automobile exception, an officer is authorized to search every part of the vehicle that may conceal the object of the search. *See Cal. v. Acevedo*, 500 U.S. 565, 570 (1991). Here, Officer Endsley's detection of the scent of marijuana coming from the vehicle, standing alone, is sufficient to give the officer probable cause to conduct a warrantless search. *See United States v. $118,170.00 in United States Currency*, 69 Fed. Appx. 714, 716 (6th Cir. 2003) ("The smell of marijuana alone constitutes probable cause to believe that drugs are in the vehicle and will justify searching without a warrant.") (citing *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993)). The presence of a handgun lying on the floor also may give an officer

probable cause to search a vehicle. *See Galaviz*, 645 F.3d at 357 (gun in plain view created probable cause to search vehicle without warrant to determine if the driver violated Michigan law). Thus, the strong aroma of marijuana coming from the car, in conjunction with the handgun in plain view and Mr. Davis's unsuccessful escape attempt, triggered the automobile exception. CPD was therefore permitted to search the vehicle and seize both loaded handguns lying under the front passenger seat.

As the search of the vehicle and seizure of the firearms were authorized under the automobile exception and plain view doctrine, the Court will not suppress the evidence and subsequent statements made by Mr. Davis.

### III.    CONCLUSION

For the foregoing reasons, Mr. Davis's Motion to Suppress is **DENIED**. (ECF No. 23.) The evidence obtained from the vehicle and Mr. Davis's subsequent statements are **ADMISSIBLE**.

**IT IS SO ORDERED.**


**2/22/2023**                                         s/Edmund A. Sargus, Jr.
**DATE**                                                 **EDMUND A. SARGUS, JR.**
                                                                  **UNITED STATES DISTRICT JUDGE**